GOBER, *et al. v.* PHILLIPS.*

(Division A.   June 11, 1928.   Suggestion of Error Overruled July 18, 1928.)

[117 So. 600.   No: 27227.]

*Corpus Juris-Cyc. References: Courts, 15CJ, p. 994, n. 1; p. 1132, n. 32.

*S. C. Broom,* for appellants.

*Powell, Harper & Jiggitts, amici curiae,* for appellee.

*Hendrix & Burkett,* for appellee.

260

Argued orally by *S. C. Broom,* for appellant, and *Lewis Jiggitts* and *John G. Burkett,* for appellee.

Cook, J. The appellee, Logan Phillips, a copartnership composed of W. H. Phillips and Cowan Dixon, instituted suit in the court of J. H. Penix, police justice and *ex officio* justice of the peace in and for the city of Jackson, in Hinds county, Miss., upon a promissory note executed by the appellants. A plea to the jurisdiction of the court was filed and was overruled, and no further defense being offered, a judgment was entered in favor of the appellee for the amount sued for. From this judgment, an appeal was prosecuted to the county court, and there a demurrer to the plea to the jurisdiction was sustained, and a judgment was entered against the appellants. On appeal to the circuit court, the judgment of the county court was affirmed, and from the judgment of the circuit court this appeal was prosecuted.

Upon the hearing of the plea to the jurisdiction and the demurrer thereto, counsel for the respective parties entered into an agreement as to the facts, from which it appears that the city of Jackson, Miss., has a population in excess of seven thousand, and since January, 1913, has been operating under what is known as the commission form of government, as provided by chapter 120, Laws of 1912, and amendments thereto; that the city of Jackson lies partly in supervisor's district No. 1 and

partly in supervisor's district No. 5, the dividing or district line being Capitol street in said city; that J. H. Penix was elected police justice of said city by the mayor and commissioners, and was actively engaged in the discharge of the duties of the office, although he had executed no bond either as police justice or *ex officio* justice of the peace; that said J. H. Penix resides within the corporate limits of the city, but in supervisor's district No. 1; that he holds his court in the Municipal Building of the said city, which is located in supervisor's district No. 5; that the defendants both reside within the corporate limits of said city, but in supervisor's district No. 5; and that the said J. H. Penix acted, in the case at bar, as *ex officio* justice of the peace.

It was further agreed that on January 21, 1913, the mayor and commissioners of the said city of Jackson adopted the following ordinances creating a police court and the office of police justice:

*"Police Court Created.*

"675. There is hereby created a police court of the city of Jackson, which shall be presided over by the police justice. All state laws and city ordinances now in existence and not inconsistent with chapter 120 of the Laws of Mississippi of 1912, relating to said court, shall govern the same."

*"Police Justice, Office Created, Duties.*

"676. There is hereby created the office of police justice of the city of Jackson, who shall be elected by the council at the same time as all other officers, and who shall perform all the duties now required of the police justice by state laws and city ordinances, not inconsistent with chapter 120 of the Laws of Mississippi of 1912."

By their plea to the jurisdiction of the court, the appellants also sought to challenge the election and qualification of J. H. Penix, and his right to hold the office of police justice and *ex officio* justice of the peace; but, on

appeal, it is conceded that the title to the office cannot thus be raised and adjudicated in this proceeding, and the only question for decision is whether or not, under the facts above stated, J. H. Penix, the acting police justice and *ex officio* justice of the peace in and for the city of Jackson, had jurisdiction of this cause.

Section 170 of the Constitution of 1890 provides that "each county shall be divided into five districts," while section 171 provides that "a competent number of justices of the peace and constables shall be chosen in each county in the manner provided by law, for each district, who shall hold their office for the term of four years," and "no person shall be eligible to the office of the justice of the peace who shall not have resided two years in the district next preceding his selection." The appellants contend that in the trial of this cause, Penix was acting as a justice of the peace within the purview and terms of these provisions, and that since he resided in supervisor's district No. 1, he was without jurisdiction in district No. 5, where the court was held and where the appellants resided. This contention of appellants must be sustained if they are correct in the view that the police court and the office of police justice and *ex officio* justice of the peace in municipalities are created under the provision of section 171 of the Constitution. We do not think, however, that in creating the police court, and conferring upon police justices the same jurisdiction as given to justices of the peace, the legislature was attempting to create additional justice of the peace districts with jurisdiction limited to the territorial limits of the municipality, but that it was exercising the authority conferred upon it by section 172 of the Constitution to, "from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient."

Section 172 of the Constitution of 1890 is in the same language as section 24 of article 6 of the Constitution of

1869, and in discussing the power of the legislature to establish a police court and to confer on the mayor of a municipality or a police justice the same jurisdiction as is conferred on justices of the peace, the court, in *Bell* v. *McKinney,* 63 Miss. 187, said:

"Under article 1, section 31, and article 6, section 24, of the Constitution, which provides that the legislature may establish in addition to the courts designated in the Constitution other inferior courts, and in cases of the misdemeanors therein ¡enumerated may dispense with the inquest of a grand jury and authorize prosecutions before justices of the peace or such other inferior courts as may be so established, it is competent for the legislature to invest the mayor of an incorporated town with the criminal jurisdiction of a justice of the peace, or to declare that the mayor of such town shall be *ex officio* a justice of the peace in the corporate limits of the town in which he was elected. A mayor's court thus constituted would be an inferior court within the meaning of the constitutional provisions above referred to."

Section 3001, Code of 1892 (section 3399, Code 1906; section 6943, Hemingway's 1927 Code), provided that the mayor and board of aldermen of cities of certain specified population were authorized to elect a police justice; and in municipalities where no police justice was elected, that the mayor should be the police justice; and that in either case the police justice should be *ex officio* a justice of the peace in and for the corporate limits of the municipality. In the case of *Hughes* v. *State,* 79 Miss. 77, 29 So. 786, the jurisdiction of a police justice to try an offense against the state laws was challenged, and in response to the contention that a police justice could not exercise the authority conferred upon justices of the peace in misdemeanor cases, the court said:

"Section 3001, Ann. Code 1892, expressly authorizes cities having four thousand or more inhabitants to select

a police justice, who shall have the power of a justice of the peace within the corporate limits, and also authority to try all infractions of city ordinances. It is not questioned that Duke was duly selected and qualified as police justice of Water Valley in conformity with the statute creating such office, and we cannot doubt the power of the legislature to create the office, and to clothe it with the jurisdiction prescribed by section 3001. How the election of two justices of the peace, in the district including Water Valley, and their readiness to act in the execution of their offices at the time of the trial of Hughes by Duke, affects the authority of Duke, we cannot see. The justices themselves, and no one for them, have any more right to complain of the authority conferred upon a police justice than a police justice has to complain of the authority conferred upon justices of the peace. The offices are not made for the incumbents, but for the public welfare, and each office stands upon a constitutional basis. The inferior courts established under section 172 of the Constitution are, in their jurisdiction, independent of the courts erected under section 171, and the number of these courts and their respective jurisdiction are within legislative authority, and their creation can be complained of only to the legislature itself.''

We think these two cases are decisive of the question presented by this appeal. The police court is created under and by virtue of the provisions of section 172 of the Constitution of 1890, and, in respect to jurisdiction, is entirely independent of the court provided for by section 171 of the Constitution, and it was competent for the legislature to confer upon police justices jurisdiction concurrent with justices of the peace, within the territorial limits of the municipality. In so doing, the legislature has not created additional justices of the peace, but has established an inferior court to be presided over by a police justice, who, by virtue of his office, shall, within

the limits of the municipality, have jurisdiction concurrent with courts of the justices of the peace in all matters, civil and criminal. The right or power of the legislature to establish such additional inferior courts, and confer upon them jurisdiction concurrent with the jurisdiction conferred by section 171 of the Constitution upon justices of the peace, was upheld in *State* v. *Speakes,* 144 Miss. 125, 109 So. 129, in which the constitutionality of chapter 131 of the Laws of 1926, known as the County Court Act, was involved.

The city of Jackson is operating under the commission form of government. Chapter 120, Laws of 1912, sections 7063 to 7092, inclusive, Hemingway's 1927 Code. Section 14 of said chapter 120, section 7076, Hemingway's 1927 Code, provides that the city council (composed of the mayor and two commissioners) shall, except as limited by the act, have, exercise, and perform all executive, legislative, and judicial powers, duties, and obligations exercised or performed by the mayor and board of aldermen acting for the city at the time of the adoption of the provisions of the act by the said city; and that the council shall also have power from time to time, to create, fill, or discontinue any and all offices and employments other than those created by the act. Acting under the authority of this section, the city of Jackson passed an ordinance creating a police court with such jurisdiction as was conferred on police courts by state laws, and the municipal ordinances then in existence, and not inconsistent with said chapter 120, Laws of 1912. It likewise passed an ordinance creating the office of police justice, and requiring said police justice to perform all the duties required of police justices by state laws and the city ordinances, not inconsistent with said chapter 120, Laws of 1912. Under these ordinances and the state laws creating police courts and the office of police justice and *ex officio* justice of the peace, and fixing the jurisdiction

thereof, the police justice of the city of Jackson has jurisdiction concurrent with the justice courts in all matters, civil and criminal, and the court below having so held, its judgment will be affirmed.

*Affirmed.*